1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSH THOMAS,                              No. 1:15-cv-01059 LJO DLB PC

12              Plaintiff,                     ORDER DISMISSING FIRST AMENDED
                                               COMPLAINT WITH LEAVE TO AMEND
13        v.
                                               THIRTY-DAY DEADLINE
14   OGBEHI, et al.,

15              Defendants.

16

17        Plaintiff Josh Thomas ("Plaintiff") is a California state prisoner proceeding pro se and in

18   forma pauperis in this civil action pursuant to 42 U.S.C. § 1983.[1]  Plaintiff filed this action on July 10,

19   2015.  He filed a First Amended Complaint on May 5, 2016.  He names California Substance Abuse

20   Treatment Facility ("CSATF") P.A. Ogbuehi, P.A. Byers, R.N. Oder, R.N. Carrasquillo, Dr. Johal,

21   L.V.N. Lamay, L.V.N. Tann, L.V.N. Thomas, D. Smiley, C.M.O. Enenmoh, Dr. Ugwueze,

22   Correctional Lt. Alva, Assoc. Warden Reynoso, L.V.N. Belantes, Correctional Sgt. Beltran, Chief of

23   Health Care Services Zamora and Does 1-4 as Defendants.

24   **A.    SCREENING STANDARD**

25        The Court is required to screen complaints brought by prisoners seeking relief against a

26   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

27   _____

28   [1] Plaintiff has three strikes under 28 U.S.C. § 1915(g), but is proceeding in this action based on the imminent danger
     exception.

                                              1

Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983.  Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  Plaintiff must present factual allegations sufficient to state a plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

///

///

2

**B.      ALLEGATIONS IN COMPLAINT[2]**

Plaintiff is currently incarcerated at the California Medical Facility ("CMF").  The events at issue occurred at CMF and CSATF.

Plaintiff explains that doctors have determined that he is permanently mobility impaired in the lower extremities, and has back, neck and shoulder injuries, degenerative disc disease, and musculoskeletal disease.  From 1986 through 2007, 23 health care provides have imposed physical limitations and work restrictions, including no prolonged walking or standing.  As his condition worsened, doctors prescribed "ADA reasonable accommodation appliances," such as an eggcrate mattress and upper locker.  His DPP code was changed from DMO to DPO, which requires wheelchair use, an eggcrate mattress, wheelchair gloves and a walker.

In 2010, Defendant Byers, in response to Plaintiff's grievance, noted that he did not qualify for a back brace or wheelchair gloves as an intermittent wheelchair user.

In 2011, while at CSATF, Plaintiff was taken to Mercy Hospital for Valley Fever treatment.  He was transferred to Corcoran State Prison Hospital to complete five months of treatment.  While there, Does 1 and 2 boxed Plaintiff's personal property and stored his ADA appliances at the Facility B Medical Clinic.

On May 11, 2011, Plaintiff was released and issued a wheelchair that had been sitting outside the hospital.  A torn sheet string was holding the seat and back together, the armrest was taped down, the ball-bearings were rusty, and the wheelchair was very hard to push.  As a result, Plaintiff reinjured his back and suffered great pain in his shoulders and neck.

Upon arrival at Facility B, Plaintiff was rehoused and had to continue to use the old wheelchair to get to the dining hall, medical appointments, etc.  His injuries worsened.

Plaintiff requested the ADA appliances that his doctors had prescribed from Does 1 and 2, but was denied.  Defendants told Plaintiff that the Facility B Medical Clinic Staff had lost the wheelchair and other appliances.  From May 11 through May 18, 2011, Plaintiff continued to complain to Defendants Lamay and Thomas and asked when his wheelchair would be located.  His requests were denied.

---

[2] Plaintiff's allegations are not all in chronological order.

1   After May 18, 2011, Plaintiff was transferred to Facility F.  However, Plaintiff had to use

2   the old loner wheelchair, and had to use his legs to push the wheelchair backwards when his arms,

3   shoulders and neck suffered severe pain and more injuries.

4   On May 24 or 25, 2011, while suffering numerous injuries as a result of having to use the

5   wheelchair, Plaintiff missed meals and other appointments.  He went to the Facility F Medical

6   Clinic and explained to Defendant Belantes that Facility B had lost his wheelchair, and that the

7   loner wheelchair was causing severe suffering.  Plaintiff requested another wheelchair, but

8   Defendant Belantes denied the request, stating, "I'll call Facility B Medical Staff."  ECF No. 23,

9   at 16.

10   On or after June 8 or 9, 2011, Plaintiff returned to Defendant Belantes and asked whether

11   Facility B had located his wheelchair.  He appeared to be upset with Plaintiff and stated that they

12   did not have his wheelchair.  Plaintiff requested another wheelchair, but was denied.  Defendant

13   Belantes told him that he needed to contact Facility B Medical.

14   In July 2011, Plaintiff's condition worsened.  He went to Facility F and talked to a

15   different nurse, who told Plaintiff that she was not the regular nurse and to come back later.

16   On August 24, 2011, Plaintiff filed a Reasonable Accommodation Request after suffering

17   sores and/or inflammation in his buttocks, back and shoulders.  He requested his wheelchair, a

18   cane, an eggcrate mattress, wheelchair cushing, wheelchair gloves and a walker with wheels.

19   Prior to October 5, 2011, Plaintiff was called to the Facility F Medical Clinic to see

20   Defendant Belantes.  Defendant Belantes stated, "come out back and get your wheelchair," but it

21   was not Plaintiff's wheelchair and was another inadequate loner wheelchair.  ECF No. 23, at 17.

22   The wheelchair was too small, hard to push and pulled to the right.  Plaintiff suffered serious

23   mental and physical pain.

24   On October 5, 2011, Plaintiff was interviewed by Defendant Beltran, who said that

25   Plaintiff received his personal property, a replacement wheelchair and a cane for his medical

26   needs.  Defendant Beltran told Plaintiff that he had spoken with Defendant Belantes, who

27   confirmed that he replaced Plaintiff's wheelchair and cane on May 13, 2011.

28   ///

4

On October 12, 2011, Defendant Beltran and Tann partially granted Plaintiff's Reasonable Accommodation Request and stated that at the time of the interview, Plaintiff was using a wheelchair. The appeal also noted that Defendant Belantes confirmed that Plaintiff's wheelchair was replaced on May 13, 2011, and that on October 2, 2011, Plaintiff was seen by Defendant Ogbuehi, who reclassified him from DPO to DPM. As a result of the exam, a wheelchair, eggcrate mattress, eggcrate cushing and gloves were denied.

Plaintiff alleges that Defendants Beltran, Belantes and Tann falsified the records, because he was rehoused in Facility F on May 18, 2011, using the same old wheelchair issued at Corcoran Hospital. Plaintiff was not on Facility F on May 13, 2011, and when he received his personal property, he was not issued a replacement wheelchair or cane. He was not issued a different wheelchair until October 2011.

Plaintiff further alleges that Defendants Alva and Reynoso knowingly falsified records "via a copy of Plaintiff's original Reasonable Modification and Accommodation Request, which was responded to by Defendant Beltran." ECF No. 23, at 18. However, the request noted, "treat as original," and Defendants Alva and Reynoso wrote, "Per the physician's response worksheet dated 9-20-11, and completed by P.A. Byers, you do not meet the criteria for DPO designation, an eggcrate mattress, eggcrate cushing, or gloves. Furthermore, it states you will benefit from walker use and a walking cane." ECF No. 23, at 18. Per the September 20, 2011, Comprehensive Accommodation Chrono, "your wheelchair was rescinded and a walking cane and walker were assigned. You were also assigned a bottom bunk and lower housing. . .your Disability Placement Program was changed to DPO to DPM and it was noted that your condition is improved." Plaintiff's request for a cane was granted, but the remaining requests were denied. ECF No. 23, at 18-19.

Plaintiff contends that Defendants Byers, Alva and Reynoso knowingly falsified the records. Specifically, he alleges that Defendant Byers did not complete a worksheet dated September 20, 2011, he was not interviewed by Defendant Alva on October 5, 2011, and Defendant Byers admitted in 2010 that Plaintiff was an intermittent wheelchair user.

///

5

As a result of the above, Plaintiff sought further accommodations from Defendants Carrasquillo, Smiley and Zamora.  On or after October 21, 2011, he submitted a Request for Reasonable Accommodation.  He submitted requests again in January 2012, regarding the needed ADA appliances and denial of medical treatment.  The requests were denied.  The ADA Department notified Plaintiff that his appeal no longer warranted processing as an ADA appeal, and was forwarded to the Health Care Appeals Office.  The appeal was treated as a disagreement with treatment and was partially granted, but Defendants Carrasquillo and Smiley did not provide any treatment or ADA appliances.

On February 12, 2011, and again in August 2012, Plaintiff requested his ADA appliances and medical treatment from Defendant Zamora.  On both occasions, his requests were denied.  Defendant Zamora stated, "at DLR, your appeal was reviewed" and "the content of the appeal, related to Disability Program Placement Verification of mobility impaired without wheelchair (DPM) versus mobility impaired requiring intermittent wheelchair use (DPO) was noted, but is not the issue of your current appeal, and as such is not addressed herein."  ECF No. 23, at 20.

Plaintiff's converted ADA appeal was assigned to Defendant Ogbuehi.  On September 20, 2011, Plaintiff was examined by Defendant Ogbuehi, and he determined that Plaintiff did not meet the criteria to be classified as DPO, or qualify to be prescribed an eggcrate mattress, eggcrate cushing or wheelchair gloves.  He denied Plaintiff's request for medical treatment.

Defendants Ogbuehi and Oder acknowledged Plaintiff's wheelchair use in the Medical Verification Progress Form issued on September 12, 2011.  Subsequently, they reclassified Plaintiff to DNM because observation by staff indicated that his condition had improved.  Defendant Ogbuehi signed the form and Defendant Ugwueze approved it on September 20, 2011.

The CDC 7410 noted that Plaintiff's cane, walker and wheelchair were rescinded.  It was signed by Defendant Ogbuehi and approved by Defendant Enenmoh on February 20, 2011.

On September 23, 2011, Defendant Oder, who is responsible for reviewing medical records and verifying inmate disabilities, issued a summary of Plaintiff's disabilities.  Defendant Oder knowingly falsified medical documents by stating that Plaintiff's disability was not verified and he did not meet DPO criteria.  The wheelchair was rescinded, and a cane and walker were

1  provided for ambulation assistance.  His accommodation chrono was updated.  However,

2  Defendant Oder acknowledged that Plaintiff had arrived with a wheelchair on May 11, 2011, and

3  signed the Medical Verification Progress Form.

4       On October 3, 2011, Plaintiff saw Defendant Ogbuehi for an examination concerning his

5  Reasonable Accommodation Request for a new wheelchair.  After examination, Plaintiff again

6  requested an eggcrate mattress, wheelchair cushing, wheelchair gloves and a new wheelchair (or

7  his own wheelchair).  Plaintiff told Defendant Ogbuehi that 20 or more doctors had prescribed

8  these appliances, which was supported by medical records and chronos.  Defendant Ogbuehi

9  stated, "I can order for you wheelchair gloves, I don't know how to get the wheelchair."  ECF No.

10  23, at 22.  Defendant Byers then entered the examination room, and Defendant Ogbuehi asked

11  him how to get Plaintiff a wheelchair.  Defendant Byers said that he should deny the appeal

12  because Plaintiff has strong legs, can walk and does not meet the criteria for DPO cushing or

13  gloves.  Defendants Byers and Ogbuehi knew that Plaintiff arrived at CTC in the old loner

14  wheelchair.

15       On October 11, 2011, Plaintiff's requests were denied by Defendant Ogbuehi, and

16  Defendants Byers and Oder joined in the denial.  They also rescinded Plaintiff's wheelchair status

17  and reclassified Plaintiff from DPO to DNM.

18       Plaintiff subsequently saw Defendant Belantes, who told him that she was asked to

19  rescind the old wheelchair and issue Plaintiff a two-wheel walker with back legs that dragged on

20  the ground, and a cane.

21       Defendant Belantes asked Plaintiff to turn in the old wheelchair, but Plaintiff refused.

22       On October 12, 2011, Plaintiff saw Defendant Johal regarding his reclassified disability

23  status and the denial of medical treatment and appliances.  Plaintiff asked him for a new

24  wheelchair and other appliances, but the requests were denied.  Defendant Johal told Plaintiff that

25  he would reschedule him in 45 days and that Plaintiff had to return his wheelchair.  Plaintiff

26  refused to give up the wheelchair and continued to suffer.

27  ///

28  ///

On November 24, 2011, Plaintiff had an MRI of his back.  Defendant Johal reviewed the results on December 5, 2011, and sent it to Medical Records on December 6, 2011.  The Radiologist Report noted numerous issues with Plaintiff's back and requested clinical correlation.

On December 12, 2011, Plaintiff had an appointment with Defendant Johal and complained of severe pain in his lower back with radiation to his legs.  He also complained that the old wheelchair and walker were continuing to aggravate his injuries.  Plaintiff requested his wheelchair, or a new wheelchair, and a four-wheeled walker with a seat, as well as wheelchair gloves and seat cushing.  The requests were denied.

On January 4 and January 31, 2012, Plaintiff saw L.V.N. Merritt.  He explained how much he suffers.  She asked why Plaintiff was using a wheelchair, and called someone after reviewing his medical records.  She said that a follow-up appointment would be scheduled within 30 days.

On February 4, 2012, Plaintiff received a chrono signed by L.V.N. Merritt changing Plaintiff to DPO status and noting that he had permanent medical condition requiring a wheelchair (outside cell) for mobility.  A new CDC 1824 was issued changing Plaintiff's DPP status to DPO (intermittent wheelchair user).  Plaintiff's cane was also rescinded and the use of a manual wheelchair was approved.

On February 8, 2012, Plaintiff had to use the same old loner wheelchair when he went to Facility F to return the cane.  While there, he requested a new wheelchair, or his own wheelchair, wheelchair gloves, wheelchair cushing and a four-wheel walker with a seat.  His requests were denied.

Plaintiff also saw Defendant Johal numerous times in June 2011, December 2011, and January through May 2012.  At all appointments, Plaintiff requested a new wheelchair, or his own wheelchair, wheelchair gloves, wheelchair cushing and pain treatment.  His requests were denied.

On May 12, 2012, Plaintiff continued to complain about his severe pain and suffering, as well as the denial of accommodations and medical treatment.  On May 15, 2012, he was interviewed by Defendant Carrasquillo, and they discussed that he be provided with appliances, and that Defendants Ogbuehi and Byers be reprimanded.  Defendant Carrasquillo noted that

1   Plaintiff was classified as DPO, but there was no indication that he requires the use of wheelchair

2   cushing and/or wheelchair gloves.  Defendant Carrasquillo denied Plaintiff's requests, and the

3   denial was approved by Defendant Smiley.

4          On May 19, 2012, Plaintiff asked Defendant Zamora for reasonable accommodations, and

5   that Defendants Ogbuehi and Byers be reprimanded.  Defendant Zamora found that after review,

6   there was no compelling evidence to warrant intervention as Plaintiff's medical condition has

7   been evaluated and he was receiving treatment deemed medically necessary.  Plaintiff received

8   the denial on August 27, 2012.

9          On August 15, 2012, Plaintiff was transferred to CMF, along with the old loner

10   wheelchair.  Using the wheelchair became intolerable and Plaintiff requested a new one.

11          Plaintiff saw Doe 2, a physical therapist, and explained the loss of his wheelchair and

12   other ADA appliances.  Doe 2 issued Plaintiff a wheelchair and ordered him wheelchair gloves.

13   However, the wheelchair was too small, very hard to push and smelled "like sore flesh-old

14   blood."  ECF No. 23, at 27.  Defendant Doe 2 told Plaintiff that it was the only one they had and

15   that he would get Plaintiff another one the next day.

16          When Plaintiff reported to physical therapy the next day, he was issued wheelchair gloves.

17   Plaintiff told Doe 2 that the wheelchair was causing pain and suffering and Doe 2 told Plaintiff

18   that he had one in the backroom.  He brought out another wheelchair and said that they did not

19   have another, so Plaintiff could either take this one or keep the one he had.  Plaintiff said that he

20   needed his own wheelchair and asked Doe 2 to contact CSATF Medical and ask whether his had

21   been located.  Defendant Doe 2 said that they had new wheelchairs coming in, and that he'd issue

22   Plaintiff a pass when he had one.  That did not happen, however.

23          Defendant Doe 2 eventually issued Plaintiff another wheelchair that was too large, and

24   Plaintiff's arms could not reach over the side to push it.  Doe 2 issued Plaintiff a smaller

25   wheelchair, but its condition was worse than the other wheelchair.  Defendant Doe 2 told Plaintiff

26   that the new wheelchairs had not come in, but that he'd make sure Plaintiff got one.  That did not

27   happen.

28   ///

1   Plaintiff submitted another request for a wheelchair to Doe 2 because the one he had was

2   intolerable.  Doe 2 did not respond.

3   Three weeks passed, and Plaintiff continued to suffer sores and raw hands as a result of

4   the inadequate wheelchair.  Doe 2 later told Plaintiff that he no longer dealt with wheelchairs and

5   that Plaintiff would have to submit his request to wheelchair repair.

6   On May 5, 2012, Plaintiff submitted another wheelchair repair request.  During a June

7   2012 interview, Plaintiff explained his need for a new wheelchair.  Doe 3 told Plaintiff that they

8   did not have a trust account withdrawal and Doe 4 walked away.  Both refused to provide

9   Plaintiff with requested appliances.

10   As of the date of the First Amended Complaint, Plaintiff is using a loner wheelchair that is

11   not workable and continues to cause more injuries.  He is at risk of becoming a paraplegic or

12   having a stroke or heart attack.

13   **C.    DISCUSSION**

14       1.    Eighth Amendment- Medical

15   While the Eighth Amendment of the United States Constitution entitles Plaintiff to

16   medical care, the Eighth Amendment is violated only when a prison official acts with deliberate

17   indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th

18   Cir.2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th

19   Cir.2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir.2012); Jett v. Penner, 439 F.3d

20   1091, 1096 (9th Cir.2006). Plaintiff "must show (1) a serious medical need by demonstrating that

21   failure to treat [his] condition could result in further significant injury or the unnecessary and

22   wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately

23   indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d 1091, 1096 (9th Cir.2006)).

24   Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a

25   prisoner's pain or possible medical need, and (b) harm caused by the indifference."  Wilhelm, 680

26   F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective

27   recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation

28   and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

10

1    Many of Plaintiff's allegations relate to his disagreement with findings after medical

2    examinations.  For example, Defendants Ogbuehi and Johal examined Plaintiff on numerous

3    occasions and changed his disability status and/or denied various appliances.  Though Plaintiff

4    may not have liked the changes, this amounts to little more than a disagreement with medical

5    treatment.

6    "A difference of opinion between a physician and the prisoner - or between medical

7    professionals - concerning what medical care is appropriate does not amount to deliberate

8    indifference." Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)),

9    overruled in part on other grounds, Peralta, 744 F.3d at 1082-83; Wilhelm, 680 F.3d at 1122-23

10   (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, Plaintiff "must show that

11   the course of treatment the doctors chose was medically unacceptable under the circumstances

12   and that the defendants chose this course in conscious disregard of an excessive risk to [his]

13   health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks

14   omitted).

15   Plaintiff has not made such a showing.  Even though Plaintiff complained of pain to his

16   medical providers, this does not mean that he is necessarily entitled to the medical equipment he

17   desires.  Based on Plaintiff's allegations, it appears that he had an assistive device, whether a

18   wheelchair, cane or walker, at all times.  Plaintiff therefore fails to state a claim against

19   Defendants Byers, Ogbuehi, and Johal.

20   Plaintiff also fails to state a claim against those Defendants who relied on the

21   examinations to support denials of Plaintiff's requests and/or appeals.  Generally, denying a

22   prisoner's administrative appeal does not cause or contribute to the underlying violation.  George

23   v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted).  However, because prison

24   administrators cannot willfully turn a blind eye to constitutional violations being committed by

25   subordinates, Jett, 439 F.3d at 1098, there may be limited circumstances in which those involved

26   in reviewing an inmate appeal can be held liable under section 1983.  That circumstance has not

27   been presented here.

28   ///

1   Further, as explained above, Plaintiff has not stated a viable Eighth Amendment claim for

2   denial of medical care.  Absent the presentation of facts sufficient to show that an Eighth

3   Amendment violation occurred in the first place, Plaintiff cannot pursue a claim against those

4   who reviewed the administrative appeal grieving the underlying denial of medical care.

5   Plaintiff therefore fails to state a claim against Defendants Byers, Beltran, Tann, Alva,

6   Reynoso, Oder, Ugwueze, Enenmoh, Carrasquillo, Smiley and Zamora insofar as they denied

7   appeals based on Plaintiff's medical exams.

8       2.      Eighth Amendment- Conditions of Confinement

9   The Eighth Amendment protects prisoners from inhumane conditions of confinement.

10  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  "[R]outine discomfort inherent in

11  the prison setting" does not rise to the level of a constitutional violation.  Johnson v. Lewis, 217

12  F.3d 726, 731 (9th Cir. 2000).  Rather, extreme deprivations are required to make out a conditions

13  of confinement claim, and only those deprivations denying the minimal civilized measure of life's

14  necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  Farmer v.

15  Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994); Hudson v. McMillian, 503 U.S. 1, 9, 112

16  S.Ct. 995 (1992).  In order to state a claim, Plaintiff must allege facts sufficient to show that

17  prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff.  E.g.,

18  Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Richardson

19  v. Runnels, 594 F.3d 666, 672 (9th Cir. 2010).

20  Plaintiff's remaining allegations are based on his contention that his wheelchairs were old

21  and damaged, making it more difficult for him to use the wheelchairs and causing additional

22  injuries.  The Court finds that Plaintiff's allegations are insufficient to support a claim that the

23  wheelchairs posed such safety hazards that they violated the Eighth Amendment.  This is

24  especially true where Plaintiff's need for a wheelchair was questioned based on medical

25  examinations, and he had other assistive devices.

26  Further, Plaintiff's allegations show that many Defendants attempted to take action to

27  remedy the situation.  For example, Defendant Belantes told Plaintiff that he would call Facility B

28  ///

1  to inquire about his wheelchair.  Defendants Belantes and Doe 2 gave Plaintiff other wheelchairs,

2  though Plaintiff contends that they, too, were insufficient.

3            Plaintiff's claim does not state a cause of action under the Eighth Amendment

4            Plaintiff's allegations that various Defendants falsified records also fails to state a claim

5  under the Eighth Amendment, which serves to redress only grave conditions of confinement.

6            He therefore fails to state a claim against any Defendant based on the condition of his

7  wheelchairs.

8            3.      Fourteenth Amendment

9            Plaintiff contends that Defendant Belantes violated the Due Process Clause of the

10  Fourteenth Amendment by denying his requests for different wheelchairs.

11            The Due Process Clause protects Plaintiff against the deprivation of liberty without the

12  procedural protections to which he is entitled under the law.  Wilkinson v. Austin, 545 U.S. 209,

13  221, 125 S.Ct. 2384 (2005).  To state a claim, Plaintiff must first identify the interest at stake.

14  Wilkinson, 545 U.S. at 221.  Liberty interests may arise from the Due Process Clause itself or

15  from state law.  Id.  The Due Process Clause does not confer on inmates a liberty interest in

16  avoiding more adverse conditions of confinement, and under state law, the existence of a liberty

17  interest created by prison regulations is determined by focusing on the nature of the condition of

18  confinement at issue.  Id. at 221-23 (citing Sandin v. Conner, 515 U.S. 472, 481-84, 115 S.Ct.

19  2293 (1995)) (quotation marks omitted).  Liberty interests created by prison regulations are

20  generally limited to freedom from restraint which imposes atypical and significant hardship on

21  the inmate in relation to the ordinary incidents of prison life.  Id. at 221(citing Sandin, 515 U.S. at

22  484) (quotation marks omitted); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

23            Plaintiff fails to identify any liberty interest that would implicate the Due Process Clause.

24            Moreover, Plaintiff's claims are addressed by the Eighth Amendment.  His claims must

25  therefore be analyzed under the standard appropriate to the Eighth Amendment, not under the

26  rubric of substantive due process.  County of Sacramento v. Lewis, 523 U.S. 833, 843, 118 S.Ct.

27  1708  (1998) (quotation marks and citation omitted).

28  ///

1

   4.   ADA

2

   Title II of the ADA provides that "no qualified individual with a disability shall, by reason

3

of such disability, be excluded from participation in or be denied the benefits of the services,

4

programs, or activities of a public entity, or be subject to discrimination by such entity."  42

5

U.S.C. § 12132.  Title II applies to the services, programs, and activities provided for inmates by

6

jails and prisons.  Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 208-13, 118 S.Ct. 1952

7

(1998); Simmons v. Navajo Cnty., 609 F.3d 1011, 1021-22 (9th Cir. 2010); Pierce v. Cnty. of

8

Orange, 526 F.3d 1190, 1214-15 (9th Cir. 2008).

9

   "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a

10

qualified individual with a disability; (2) [he] was excluded from participation in or otherwise

11

discriminated against with regard to a public entity's services, programs, or activities; and (3)

12

such exclusion or discrimination was by reason of [his] disability."  Lovell v. Chandler, 303 F.3d

13

1039, 1052 (9th Cir. 2002); accord Simmons, 609 F.3d at 1021; McGary v. City of Portland, 386

14

F.3d 1259, 1265 (9th Cir. 2004).

15

   Plaintiff's complaint does not set forth any facts supporting a claim that he was excluded

16

from, or discriminated against, with regard to services, programs, or activities by reason of his

17

disability.  To the contrary, the incidents giving rise to this lawsuit appear related solely to

18

Plaintiff's medical care and wheelchair use, and such allegations do not provide a basis upon

19

which to impose liability under the ADA.  Simmons, 609 F.3d at 1022 (citing Bryant v. Madigan,

20

84 F.3d 246, 249 (7th Cir. 1996)).

21

   Plaintiff therefore fails to state a claim under the ADA.

22

**D.   ORDER**

23

   Plaintiff's complaint does not state any cognizable claims.  Plaintiff has not previously

24

been provided with notice of the deficiencies in his claims and the Court will provide Plaintiff

25

with the opportunity to file an amended complaint, if he believes, in good faith, he can cure the

26

identified deficiencies.  Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Lopez, 203 F.3d

27

at 1130-31; Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  If Plaintiff amends, he may

28

///

14

1    not change the nature of this suit by adding new, unrelated claims in his amended complaint.

2    George, 507 F.3d at 607.

3        If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but under

4    section 1983, it must state what each named Defendant did that led to the deprivation of

5    Plaintiff's constitutional rights and liability may not be imposed on supervisory personnel under

6    the theory of *respondeat superior*, Iqbal, 556 U.S. at 676-77; Starr, 652 F.3d at 1205-07.

7    Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief

8    above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

9        Finally, an amended complaint supercedes the original complaint, Lacey v. Maricopa

10    County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself

11    without reference to the prior or superceded pleading," Local Rule 220.

12        Accordingly, it is HEREBY ORDERED that:

13        1.      The Clerk's Office shall send Plaintiff a complaint form;

14        2.      Within **thirty (30) days** from the date of service of this order, Plaintiff must file an

15             amended complaint curing the deficiencies identified by the Court in this order;

16        3.      If Plaintiff fails to comply with this order, this action will be dismissed, without

17             prejudice, for failure to obey a court order.

18

19   IT IS SO ORDERED.

20      Dated:    __July 22, 2016__            _____ /s/ *Dennis L. Beck*

21                                        UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28